JOSEPH W. REYNOLDS *vs.* THE ST. PAUL TRUST COMPANY.

Argued Oct. 17, 1892. Decided Nov. 4, 1892.

Tender—Refusal to Accept—Conversion.

> For the purpose of making a tender or payment to P., R. made a general deposit in a bank to the credit of P. The latter, upon being informed of it, refused to accept it. *Held*, that upon the administrator of P. withdrawing the money from the bank it belonged to R., and that he could maintain an action for conversion upon a refusal to pay it to him.

Rulings on Evidence.

> Certain rulings excluding evidence as immaterial *held* correct.

Appeal by defendant, The St. Paul Trust Company, from an order of the District Court of Ramsey County, *Kerr*, J., made April 22, 1892, refusing a new trial.

This action was brought by the plaintiff, Joseph W. Reynolds, against the defendant, for the alleged conversion by it, on July 13, 1888, of the sum of $1,500, which plaintiff had deposited to the credit of Edward C. Palmer, in the First National Bank of St. Paul, as stated in the opinion. After the death of Judge Palmer, and the appointment of defendant as administrator of his estate, plaintiff filed a petition in the Probate Court in which he alleged that he paid this $1,500 to Palmer in pursuance of a prior contract between them for the redemption of certain real estate from foreclosure sales. He also brought an action in the District Court of Ramsey County, against the administrator of Palmer's estate and the heirs, making a similar allegation in his complaint, and demanding that the administrator be required to convey the real estate to him, and to satisfy and discharge of record, the mortgages. He was defeated in that action. *Reynolds* v. *St. Paul L. & T. Co.*, 46 Minn. 84.

The case was tried December 9, 1891, and resulted in a verdict for the plaintiff for $1,500 and interest. A motion for a new trial was denied, and defendant appealed.

*Harvey Officer*, and *Chas. N. Bell*, for appellant.

*W. H. Townsend*, for respondent.

GILFILLAN, C. J. This action is for converting $1,500, claimed to be the money of the plaintiff. The facts upon which the plaintiff claims the money was his were, that in November, 1887, the plaintiff claimed that there existed between him and the late E. C. Palmer, who then held a certificate of mortgage foreclosure upon certain real estate in St. Paul, the title to which real estate was in the plaintiff, the time to redeem not having expired, and also held other liens on said real estate, a contract or agreement by which Palmer agreed that, upon plaintiff paying him the amount of all his claims and liens upon the real estate, he would convey it to plaintiff, and cancel and discharge all his liens and claims upon it; and that, Palmer being absent from the state, plaintiff, accompanied by an agent of Palmer, went to the First National Bank in St. Paul, with which Palmer kept his bank account, and, for the purpose of paying or tendering the amount required by him to be paid by said contract, made a general deposit in said bank, to the credit of Palmer, of the sum of $1,500. Whether the agent had authority to accept the tender or payment does not appear, but, at any rate, he did not accept it, and when Palmer was informed of it he refused to accept it. He died in the spring of 1888 without having accepted it. It appears that between said deposit and his death there was at all times a credit to him of at least $1,500 in the bank. The defendant was appointed Palmer's administrator, and in July, 1888, drew out of the bank all that at his death stood to his credit,—some $3,500. Prior to bringing this action the plaintiff demanded of defendant that it pay him the $1,500, and it refused.

When the money was deposited in the bank, the title to it, of course, vested in the bank, and it became debtor to Palmer in the amount of the deposit. No relation between plaintiff and the bank grew out of the deposit. Palmer alone could withdraw it. But the deposit did not vest in Palmer, as between him and plaintiff, at once and absolutely, the right to draw it out and use it. The deposit was made for a specific purpose, and, before Palmer could treat the credit created by it as absolutely his own, it was necessary that he should accept it as made. Plaintiff did not intend to give him the money,

nor that it should be his, unless he accepted it for the purpose for which it was deposited, to wit, as a payment of his liens and claims against the real estate. As soon as he rejected the tender thus attempted by plaintiff, the situation was that there stood a credit to him for $1,500, money of the plaintiff, which, as between him and the bank, he had the power to withdraw, but which, had he withdrawn it, would, as soon as it came into his hands, have been the money of plaintiff, and not his own. The relation between the two was never that of debtor and creditor, but had he drawn out the money it would have been more nearly that of bailor and bailee, or of trustee and *cestui que trust*. The defendant, as Palmer's administrator, had no greater rights than he. When it drew the money out, plaintiff's right to it was the same as though Palmer had drawn it out. It had in its hands that amount of money belonging to plaintiff. Had it turned the money into the estate as belonging to it, it may be that plaintiff would have had the right to assent to it, and to have made a claim against the estate as for money had and received. But he was not obliged to do so. He could hold defendant responsible, unless it could show a legal justification for converting the money.

The final decree in what is styled the "equity suit" was wholly immaterial. That plaintiff failed in an action to enforce the alleged agreement between him and Palmer, the ground upon which the decree defeating him was made not appearing, could have no tendency to prove or disprove anything in controversy in this case.

And it was the same with the various files of the probate court in the administration of Palmer's estate. They would have no tendency to disprove plaintiff's right to the money, nor to prove that it belonged to the estate.

Upon evidence differing upon one point from that in the case, those proceedings, and especially the fact of distribution of the $1,500 as part of the estate, might have been material, not on the question of the money being in fact part of the estate, but as an element in estopping plaintiff to dispute that fact. The distribution, even under the order of the court, would not, of itself, make out an estoppel. To constitute an estoppel, it was necessary that the acts of defend-

ant should have been done in ignorance of plaintiff's right to the money, and that the ignorance was due to some act or omission on his part. From the evidence it is apparent,—indeed, it does not seem to have been disputed on the trial,—that defendant at all times knew the facts which showed who was entitled to the $1,500. Not only was there no attempt to contradict plaintiff's testimony that he informed the defendant of all the circumstances of the deposit of the $1,500, but more than a year and a half before the time when, as defendant claims, it made distribution, plaintiff commenced an action against defendant and others to enforce the alleged agreement between him and Palmer, and in which the transaction at the bank, and that Palmer refused the tender then attempted, must be presumed to have come to the knowledge of the defendant.

Order affirmed.

(Opinion published 53 N. W. Rep. 457.)